(27 Misc. Rep. 605.)

### NIVER v. VILLAGE OF BATH ON HUDSON.

(Supreme Court, Trial Term, Rensselaer County. December, 1898.)

1. CITIES—STREET GRADE—ESTABLISHMENT.
   A street was used for 68 years prior to the incorporation of a village, and for 20 years thereafter was recognized as a street by the trustees. *Held*, that the grade was fixed by user, and hence a proceeding to grade it without the application and notice required by the charter in the case of changing grades was void.

2. SAME—CHANGE OF GRADE—ASSESSMENT—ANNULMENT.
   Where resolutions and papers relating to an assessment spoke of grading a street, and not of changing an existing grade, a suit to annul the assessment was the proper remedy, rather than certiorari to review it; proof being required to show that the assessment was for changing a grade already established.

Suit by Worthy Niver, as executor and trustee under the will of Atty Niver, deceased, against the village of Bath on Hudson. Decree for plaintiff.

Countryman, Du Bois & Bevans, for plaintiff.
John S. Wolfe, for defendant.

CHASE, J. The village of Bath on Hudson was incorporated by chapter 325 of the Laws of 1874. Prior to the incorporation of the village of Bath on Hudson there had been a village in fact at that place for many years, with streets, sidewalks, and some general village improvements. Running through said village from north to south was a street called "Steuben Street," now known as "Broadway," and which at an earlier period was a part of the Farmers' Turnpike, running from the village of Greenbush to the city of Troy. The Farmers' Turnpike was incorporated in the year 1806, and was maintained until the year 1848, when it was, in part, abandoned. When said turnpike was so in part abandoned, the fee of said street passed to the town of North Greenbush; and on the incorporation of said village, in 1874, the fee of said street passed to the village of Bath on Hudson, and is still owned by said village. The charter of the village provides that the board of trustees shall be commissioners of highways in and for said village, with all the powers of commissioners of highways of towns in this state subject to the act of incorporation. The charter, also, in enumerating the powers of the trustees, provides:

"To keep the roads, avenues, streets, lanes, public buildings and public places of the village in good repair, order and condition; * * * to regulate and prescribe the width line and grade of streets, avenues, lanes, and sidewalks; * * * lay out and open new roads and streets; to widen, alter, and change the grade or otherwise improve roads, avenues, streets, lanes, and sidewalks; * * * but no new road or street shall be opened and no widening no sewer, drain, curbstone, or flagged brick or composition sidewalk or changing the grade of any street shall be done unless on written application of the owners of a majority in feet of the property on the line of such proposed improvement."

In 1891 the charter of the village was amended and revised, and, as so amended and revised, it included among the enumerated powers of the trustees the following:

"To lay out, make, open, grade, level, regulate, pave, macadamize, plank, gravel, clean, repair and improve highways, streets, lanes, alleys, public grounds, parks, sidewalks and gutters, and alter, amend, widen, straighten, and discontinue the same, and to establish grades, and levels therefor, and alter the same through any lands, buildings, or enclosures in said village subject to the provisions of law and of this act."

Said amended and revised charter also specifically provides:

"Whenever the improvement to be made under this act shall be the laying of a stone, brick or composition walk, or the setting of curbstones or paving a street, or the changing the grade of any street, no such work shall be done unless on written application of a majority in feet of the persons residing in said village owning property on the line of such proposed improvements, except that in changing the grade of any street a majority in feet of all owners must petition, and two weeks' notice of the intention of the board of trustees to act on said matter shall be published in the official newspaper of the village."

In July, 1874, one E. S. Cary, engineer, made a survey and map of the streets, highways, alleys, etc., of said village, including the street now known as "Broadway"; and thereafter the board of trustees, by resolution, adopted and established the grades laid down on the map and profile so made by said engineer. By said map and the resolu-

tions of the board of trustees, Broadway was recognized as one of the streets of said village, and for some years thereafter more or less work was done upon said street under the direction of the board of trustees of said village. For many years prior to 1874 buildings had been erected, and sidewalks, to some extent, maintained, on said street known as "Broadway." On the 11th day of May, 1896, the board of trustees, without the written application of a majority in feet of all owners of property on the line of said Broadway, or without any written application whatever, and without any notice of the intention on the part of the trustees to act in said matter published as required by said charter, passed a resolution to the effect that Broadway be graded from the intersection of Tracey street north to the intersection of Broadway with Washington avenue on the originally prescribed grade, as laid down on the village map so made in July, 1874. Atty Niver, the predecessor in title of the plaintiff, was the owner of four lots on the west side of Broadway, immediately north of Ferry street. Notice was duly given to her to grade the street in front of her lot. She neglected to do such grading, and the same was graded by the direction of the board of trustees; and, as she failed to pay the expense thereof, the same was assessed against her said property, and a proceeding was instituted for the sale of said property for the payment of said assessment. This action is brought for the purpose of restraining said sale, and to set aside said assessment as illegal and void, and also for damages alleged to have been occasioned by reason of raising the grade of the street in front of her premises.

The court of appeals has held that a street grade may be established by long user, and by the acquiescence and recognition of a municipality, even though no formal ordinance or resolution fixing the grade has ever been passed. Folmsbee v. City of Amsterdam, 142 N. Y. 118, 36 N. Y. Supp. 821. In Folmsbee v. City of Amsterdam case the charter under consideration provided, "When the grade of a street has been established, and street graded accordingly, the grade shall not be changed, and the street graded according to the changed grade, except upon petition of the owners of a majority," etc., and the language of the court of appeals is used in construing the meaning of such charter. In this case the charter expressly provides that the petition shall be presented, and notice shall be given, whenever there is a change of a grade of any street. This street had concededly been used for at least 68 years prior to the incorporation of the village of Bath on Hudson, and it has since been acquiesced in and recognized for over 20 years by the trustees of the village. Broadway was a street of said village in 1874 and in 1896, with a grade established by user. By the express provisions of the charter of the village, it is necessary to have a petition, and to publish a notice as provided by such charter, before the grade of any street can be changed, and the work of grading done pursuant to such change. If assessment proceedings are regular upon their face, and the alleged illegality can only be made to appear by extrinsic evidence, the party aggrieved may maintain an action in equity to annul the assessment. It is only where the irregularity complained of is formal in its character that

the person assessed is compelled to review the assessment, if at all, by a writ of certiorari.   Providence Retreat v. City of Buffalo, 29 App. Div. 160, 51 N. Y. Supp. 654.  In this case all of the resolutions and papers relating to the assessment speak of grading Broadway, and in no instance is the work spoken of as a regrading of Broadway, or as changing the grade of an existing street.   I conclude, therefore, that the irregularity or defect complained of is not such as to compel the plaintiff in this action to resort to a writ of certiorari to review the assessment.   Proof is required to show that the assessment is for work in changing the grade of an existing street.   Notwithstanding the determination of the jury in regard to plaintiff's damage, I am unwilling to hold, on the evidence presented to me, that the plaintiff has been damaged by the grading done by the defendant in front of his premises.   Consequently it is unnecessary for me to consider the legal questions involved in that branch of the case.

Judgment may be entered herein in favor of the plaintiff, declaring the assessment referred to in the complaint illegal and void, and also granting an injunction against the defendant, prohibiting and enjoining it from interfering in any way with the premises of the plaintiff by reason of such assessment, with costs.